Pro Se 7 (Rev 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
## for the
### District of Columbia ▾

_____ Division

| | |
|---|---|
| Crystal B. Nwaneri ) <br> ) <br> ) <br> _Plaintiff(s)_ ) <br> (Write the full name of each plaintiff who is filing this complaint. ) <br> If the names of all the plaintiffs cannot fit in the space above, ) <br> please write "see attached" in the space and attach an additional ) <br> page with the full list of names.) ) <br> -v- ) <br> ) <br> Quinn Emanuel Urquhart and Sullivan LLP ) <br> ) <br> ) <br> _Defendant(s)_ ) <br> (Write the full name of each defendant who is being sued. If the ) <br> names of all the defendants cannot fit in the space above, please ) <br> write "see attached" in the space and attach an additional page ) <br> with the full list of names.) | Case No. _____ <br> _(to be filled in by the Clerk's Office)_ <br><br> Jury Trial: _(check one)_ ☑ Yes ☐ No <br><br> Case: 1:19-cv-01540 JURY DEMAND <br> Assigned To : Unassigned <br> Assign. Date : 5/7/2019 <br> Description: Employ. Discrim. (H-DECK) <br><br> Angela D. Caesar, Clerk of Court <br> U.S. District Court, District of Columbia |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I. **The Parties to This Complaint**

A. **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Crystal B. Nwaneri |
| Street Address | 8297 Delhi Road |
| City and County | North Charleston |
| State and Zip Code | SC 29406 |
| Telephone Number | 917-651-8546 |
| E-mail Address | cbnwaneri@gmail.com |

B. **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title _(if known)_. Attach additional pages if needed.

1

Defendant No. 1

    Name                        Quinn Emanuel Urquhart & Sullivan LLP

    Job or Title *(if known)*

    Street Address             1300 I Street NW, Floor 9

    City and County           Washington

    State and Zip Code       DC 20005

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 7 (Rev 12/16) Complaint for Employment Discrimination

## C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Quinn Emanuel Urquhart & Sulllivan LLP |
| Street Address | 1300 I Street NW, Floor 9 |
| City and County | Washington |
| State and Zip Code | DC 20005 |
| Telephone Number | |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

[✔] Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ] Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

[ ] Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[✔] Other federal law *(specify the federal law)*:
28 USC 1981, Equal Pay Act, Lily Ledbetter, See attachment

[✔] Relevant state law *(specify, if known)*:
DCHRA, DC tort laws re: wrongful termination, civil conspiracy, and harassment

[✔] Relevant city or county law *(specify, if known)*:
DC Council Whistleblower Protections

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes (check all that apply):

- ☐ Failure to hire me.
- ☑ Termination of my employment.
- ☑ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts (specify):

(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
M

C. I believe that defendant(s) (check one):
- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my (check all that apply and explain):
- ☑ race — African-American
- ☑ color — Black
- ☑ gender/sex — Female
- ☐ religion
- ☐ national origin
- ☐ age (year of birth) _____ (only when asserting a claim of age discrimination.)
- ☐ disability or perceived disability (specify disability)

E. The facts of my case are as follows. Attach additional pages if needed.

See attached. Briefly, Plaintiff Crystal Nwaneri worked as an associate at Quinn Emanuel Urquhart & Sullivan LLP, an international law firm with an office in Washington, D.C. between 2012 and 2016. Plaintiff brings this action to remedy discrimination in the terms and conditions of her employment, including promotion, compensation, termination, and other established policies on the basis of her race, sex, and gender. In addition, Plaintiff brings this action to remedy Quinn Emanuel's ongoing retaliation against her and her close family members, led by the managing partners of the D.C. office and other senior named partners at the law firm, in response to Plaintiff's internal and external EEOC complaints about Quinn Emanuel's unlawful discrimination and retaliation (in particular, her complaints concerning

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
February 27, 2017

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)*

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Compensatory and punitive damages to be determined at trial.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 5/6/19

Signature of Plaintiff: *Crystal B N——*

Printed Name of Plaintiff: Crystal B Nwaneri

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form | [x] FEPA [x] EEOC | 570-2017-00943 |

| DC Office of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Crystal Brown Nwaneri | 917-651-8546 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 916 Harrison Circle | Alexandria, VA 22304 | 5/12/1979 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Quinn Emanuel Urquhart & Sullivan, LLP | Approximately 700 | 202-538-8000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 777 6th St NW | Washington, D.C. 20001 | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

[x] RACE  [ ] COLOR  [x] SEX  [ ] RELIGION  [ ] AGE
[x] RETALIATION  [ ] NATIONAL ORIGIN  [ ] DISABILITY  [ ] OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)   LATEST (ALL)
February 2014         June 30, 2016

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s))

[Please see attached sheets.]
Alternative Contact Information:
Sanford Heisler, LLP
1666 Connecticut Ave NW, Suite 300
Washington, DC 20009
Phone: 202-499-5222; Fax: 202-499-5100

28

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct | SIGNATURE OF COMPLAINANT |
| 2/27/17   [signature: Crystal BN] | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date    Charging Party (Signature) | |

# EEOC Charge of Discrimination
## Crystal Nwaneri

### I. Overview of Individual and Class Allegations

1. In the course of my employment, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel" or "the Firm") subjected me and other female and African American employees to discrimination based on gender and race. Quinn also retaliated against me and other female employees in response to taking family leave.

2. This discrimination included: (a) Family and Medical Leave Act (the "FMLA") retaliation; (b) discrimination in compensation; (c) discrimination in the terms and conditions of employment; (d) retaliation; and (e) discrimination in termination.

3. Quinn Emanuel knew or should have known that its business practices discriminate against or have an illegal disparate impact on women and African Americans, including me, and failed to take measures to rectify this discrimination.

4. I believe that Quinn Emanuel's actions are a part of a continuing pattern and practice of discrimination against female and African American employees.

### II. Employment and Education History

5. I received my Bachelor of Arts in English and Government from Georgetown University in 2001. I subsequently completed graduate coursework for a Master's degree from Georgetown University (School of Continuing Education—Public Policy).

6. In 2006, I earned my Juris Doctor from Georgetown University Law Center. I excelled in law school and made the Dean's List in the 2003-2004 and 2005-2006 school years. After law school, I worked at two AmLaw 100 law firms and completed judicial clerkships on the U.S. Court of Appeals for the Seventh Circuit and the U.S. District Court for the District of South Carolina.

7. In October 2012, I joined Quinn Emanuel's Washington, D.C. office with six years of legal experience. Shortly after joining the Firm, I was selected to lead a team of attorneys on one of the Firm's largest litigation matters concerning claims of mortgage-backed securities fraud. Although the entire case team was located in the New York office, I successfully managed a large docket, more than sixty contract attorneys, offensive discovery (including the collection and analysis of over four million documents), and ultimately helped to achieve the most extensive settlement of this type of case at the Firm.

8. In 2014, I worked on a significant tax-related investigation based in Switzerland. My responsibilities included analyzing thousands of accounts to determine the client's tax penalty exposure, interfacing daily with the client on-site, conducting client witness interviews throughout Switzerland, and writing the central white paper for the client's international financial regulator. Both the client and the Quinn Emanuel partner leading the case expressed great satisfaction with my work.

## EEOC Charge of Discrimination
## Crystal Nwaneri

worked with any partners in my home office, I requested billable assignments based in D.C. However, the Firm made no efforts to assign me to billable cases.

16. In February 2014, after I realized the Firm did not intend to provide me with billable work, I pursued, and eventually, began working on a matter involving a white-collar tax investigation based in Switzerland. The case required me to work full-time at the client's site in Lugano, Switzerland for approximately six months. I went above and beyond for the Firm and my clients while working abroad, far from my family while my mother was severely ill. I was also pregnant at the time. I nevertheless continued working from Switzerland through July 2014, when I became unable to travel extensively due to the late stage of my pregnancy. In August 2014, I returned to the D.C. office and continued to work with the partner responsible for the Swiss tax matter.

17. In September 2014, I took a second FMLA leave after giving birth on September 19. Shortly afterward, on October 2, 2014, my mother passed away. Even while I was on leave dealing with my mother's death and caring for my newborn baby, I continued to support my cases to the best of my ability, including preparing client presentations to the U.S. Department of Justice.

18. When I returned to the office in January 2015, the Firm refused to assign me billable work for matters in the D.C. office. Contrary to the Firm's written policy, the Firm also refused to pay me a prorated bonus for the work I completed before I took leave in September 2014.

19. Upon information and belief, Quinn has retaliated against other female attorneys who took FMLA maternity leave by refusing to provide them with billable work when they returned from leave and failing to pay prorated bonuses for the time they worked before taking FMLA leave.

### B. Discrimination in Compensation

20. Upon information and belief, I understand that Quinn Emanuel paid me less in bonus pay than similarly situated white and male attorneys. For example, I am aware of at least one white male associate who took FMLA leave around the same time as me to care for his newborn child and had reduced hours in 2014 and 2015. While Quinn Emanuel paid him a prorated bonus in 2014, the Firm refused to pay me a prorated bonus based on the work I completed in 2014.

### C. Discrimination in Terms and Conditions of Employment

21. Despite my previous success at the Firm, partners at Quinn Emanuel also subjected me to discrimination in employment based on my race and gender. In particular, after I returned from maternity leave in 2015, the Firm discriminated against me in the terms and conditions of my employment by frequently subjecting my performance to greater scrutiny and unwarranted criticism than my white and male colleagues, assigning more favorable work to my white and male peers, and marginalizing me in favor of white and male associates.

Page | 3

## EEOC Charge of Discrimination
## Crystal Nwaneri

28. By contrast, when my white and male colleagues missed both external and internal deadlines and were weeks late with their assignments, Mr. Shaffer happily made exceptions for their failures. For example, Mr. Cooper was several weeks late in circulating a draft brief, requiring the client to seek an extension from the court. Rather than publicly ridicule him, Mr. Shaffer went out of his way to be accommodating. And when Mr. Cooper missed several other internal deadlines after the court granted the extension, Mr. Shaffer did not chastise him or call attention to the brief's tardiness. Upon receiving Mr. Cooper's draft, Mr. Shaffer responded with "thanks" and complimented Mr. Cooper's efforts.

29. Mr. Shaffer's overall demeanor towards me was also starkly different from his interactions with white and male associates on the case team. While he avoided confrontations with them, Mr. Shaffer went out of his way to be confrontational with me. He frequently engaged in abusive and degrading conduct, which included publicly denigrating me over email, using verbally abusive language, making incessant and unnecessary phone calls, and showing up to my office unannounced to check on my work even when there was no pressing or time-sensitive issue.

30. Mr. Shaffer's discriminatory and abusive behavior towards me was so blatant and pronounced that other Firm employees noticed and acknowledged it. In fact, Harold Barza, a Los Angeles-based partner who also worked on the case, regularly checked in with me due to concerns about Mr. Shaffer's hostile behavior. In late June 2015, in response to Mr. Shaffer's emails and general mistreatment of me, Mr. Barza offered to speak with Mr. Burck on my behalf about Mr. Shaffer's abusive treatment and to give him positive feedback on my work on the case. In an effort to handle my concerns discretely, I declined his offer and decided to speak to Mr. Burck directly about Mr. Shaffer's behavior.

### D. Retaliation in Response to Complaints Regarding Disparate Treatment

31. On July 7, 2015, after months of enduring discriminatory treatment, I emailed Mr. Burck and Mr. Shaffer about Mr. Shaffer's disparate treatment, asking to be treated with the same level of respect he showed to white and male associates. Later that day, I met with Mr. Shaffer about these issues and the status of the case; Mr. Burck was scheduled to attend the meeting but ultimately did not show up.

32. Rather than discuss the concerns I detailed in my email, Mr. Shaffer again berated me verbally, culminating in his informing me that he and Mr. Burck—the co-managing partner in the D.C. office and one of the more influential partners at the Firm—had already decided that I was not "partner material" for Quinn Emanuel. Mr. Shaffer could not state with any specificity why or how this conclusion was reached, but he was adamant that Mr. Burck and other partners at the Firm would not want to work with me.

33. Immediately after the July 7 email and meeting, Mr. Burck and Mr. Shaffer further marginalized my role on the case and severely restricted my responsibilities. Later that month, I also complained to Jon Corey, the other co-managing partner in the D.C. office, about

**EEOC Charge of Discrimination**
**Crystal Nwaneri**

attend the government's deposition of a chief executive, which I accepted and confirmed with the case team, including Mr. Burck. Mr. O'Neil ostensibly agreed with this approach, but shortly after I informed the case team of the proposed strategy, Mr. O'Neil subverted my efforts by telling Mr. Burck that the client had not requested my attendance and that he or the more junior associate on the matter were better qualified to attend. As a result, Mr. Burck told me not to attend the deposition.

38.    Mr. Burck subjected me to a much higher level of scrutiny than my white and male colleagues, including Mr. O'Neil. Mr. Burck often overlooked Mr. O'Neil's errors, while searching for aspects of my work product to criticize. For instance, early on in the matter, I had taken the initiative to review and revise the client's bills in compliance with the client's internal policies and insurance requirements. As a result, I corrected the entire team's billing entries, including Mr. Burck and Mr. O'Neil's entries. However, Mr. Burck focused on two duplicate entries of mine and queried me multiple times via email and in person about the reasons for correction. Meanwhile, he completely ignored the same error and correction in Mr. O'Neil's billing entries.

39.    Despite Mr. Burck's, Mr. Shaffer's, and Mr. O'Neil's treatment towards me, Quinn Emanuel never formally communicated to me any substantive negative feedback about my work until October 2015. Specifically, the first time Mr. Burck expressed any substantive negative feedback to me was during a meeting on October 27, 2015, and that feedback was from only two other partners about two short-term assignments. At the meeting, Mr. Burck also asked me again about billing corrections but indicated his questions were resolved and had not been an issue for the client.

40.    With respect to my substantive work on the case with Mr. O'Neil, Mr. Burck told me that my work was "good" and that he was satisfied with my performance. He also gave me additional assignments on the matter, which I completed promptly. Lastly, Mr. Burck encouraged me to seek those two partners out directly to clear up any miscommunication and to follow up with him, telling me this was only the beginning of a "continuing conversation."

41.    After the October 2015 meeting, I reached out to those two partners as promised and also tried repeatedly to follow up with Mr. Burck about the issues he had raised, but most of these efforts were in vain. Although he suggested that the October 27 meeting was the start of an ongoing discussion, Mr. Burck ignored more than ten of my emails and also cancelled or failed to attend several meetings I had scheduled with him. After the October 27, 2015 meeting, I had no substantive conversations with Mr. Burck about my performance until March 1, 2016, as described below. Furthermore, the Firm failed to provide me with a formal review for 2015 even though I requested it.

**F.    Discrimination in Termination**

42.    Quinn Emanuel discriminated against me by wrongfully terminating my employment on May 4, 2016. Quinn Emanuel used my discriminatorily reduced billable hours as a pretext to unlawfully terminate my employment.

Page 7

**EEOC Charge of Discrimination**
**Crystal Nwaneri**

49.   In response, Mr. Corey arranged to meet with me on May 4, 2016. When I arrived at the meeting, Mr. Corey informed me for the first time that he invited Mr. Burck to also attend. Together, Mr. Corey and Mr. Burck abruptly informed me that the Firm was terminating my employment due to my difficulties securing billable work. Mr. Burck also claimed that other partners would not consider me for partnership due to my low hours. In response, I specifically asked Mr. Corey and Mr. Burck for my 2015 performance review, which they refused to provide.[2]

50.   Mr. Burck made this claim regarding my candidacy for partnership even though I had deferred consideration until November 2016. Quinn Emanuel failed to adhere to its policy allowing deferrals for partnership consideration and refused to give me fair consideration for partnership or other promotions.

51.   The Firm has repeatedly granted similarly-situated white and male associates additional time before partnership consideration and/or promoted them to partner or counsel despite their low hours. For example, Brett Watkins, a white male associate who, like myself, is Class of 2006 and had low hours in 2014 and 2015, has been allowed additional time to develop and remains employed at the Firm. Additionally, Gabriel Soledad, a male associate at the Firm, graduated from law school in 2005, but Quinn Emanuel considers him as part of the Class of 2007, giving him a two-year extension on his timeline to be considered for partner.

52.   Similarly, Quinn Emanuel has also promoted other white and male associates to Counsel positions, despite their appearing on the Firm's "low hours" list. Promotion to counsel was never an option for me as Quinn Emanuel unlawfully terminated me once it decided to remove me from the partnership track.

53.   Even after my termination, Quinn Emanuel continued to subject me to unlawful conduct in retaliation for complaining about the Firm's mistreatment of me. For example, despite numerous requests, the Firm failed to compensate me for more than four weeks of accrued, unused vacation pay upon my departure. Moreover, even though I had the option to enroll in COBRA, Quinn Emanuel failed to provide me with the necessary documentation and caused me to miss the deadline to enroll so that I could secure backup health coverage for myself and my family.

54.   The Firm has also made efforts since unjustly terminating me to ruin my professional reputation outside of Quinn Emanuel and has all but ensured that I would face extreme difficulties in finding new employment. On September 16, 2016, in open court before a local Maryland circuit court judge and in the presence of other lawyers, Quinn Emanuel falsely claimed that I had "threatened to sue" the Firm in response to their July 2016 motion to withdraw from a case I brought to the Firm.

55.   The Firm also made several other disparaging comments about me on the record at the September 2016 hearing, suggesting that I had not provided adequate representation to the

---

[2] On June 7, 2016, Mr. Corey again refused to provide me with my 2015 performance evaluation, even though I am informed and believe that the Firm provided performance evaluations to other associates

# EEOC Charge of Discrimination
## Crystal Nwaneri

49. In response, Mr. Corey arranged to meet with me on May 4, 2016. When I arrived at the meeting, Mr. Corey informed me for the first time that he invited Mr. Burck to also attend. Together, Mr. Corey and Mr. Burck abruptly informed me that the Firm was terminating my employment due to my difficulties securing billable work. Mr. Burck also claimed that other partners would not consider me for partnership due to my low hours. In response, I specifically asked Mr. Corey and Mr. Burck for my 2015 performance review, which they refused to provide.[2]

50. Mr. Burck made this claim regarding my candidacy for partnership even though I had deferred consideration until November 2016. Quinn Emanuel failed to adhere to its policy allowing deferrals for partnership consideration and refused to give me fair consideration for partnership or other promotions.

51. The Firm has repeatedly granted similarly-situated white and male associates additional time before partnership consideration and/or promoted them to partner or counsel despite their low hours. For example, Brett Watkins, a white male associate who, like myself, is Class of 2006 and had low hours in 2014 and 2015, has been allowed additional time to develop and remains employed at the Firm. Additionally, Gabriel Soledad, a male associate at the Firm, graduated from law school in 2005, but Quinn Emanuel considers him as part of the Class of 2007, giving him a two-year extension on his timeline to be considered for partner.

52. Similarly, Quinn Emanuel has also promoted other white and male associates to Counsel positions, despite their appearing on the Firm's "low hours" list. Promotion to counsel was never an option for me as Quinn Emanuel unlawfully terminated me once it decided to remove me from the partnership track.

53. Even after my termination, Quinn Emanuel continued to subject me to unlawful conduct in retaliation for complaining about the Firm's mistreatment of me. For example, despite numerous requests, the Firm failed to compensate me for more than four weeks of accrued, unused vacation pay upon my departure. Moreover, even though I had the option to enroll in COBRA, Quinn Emanuel failed to provide me with the necessary documentation and caused me to miss the deadline to enroll so that I could secure backup health coverage for myself and my family.

54. The Firm has also made efforts since unjustly terminating me to ruin my professional reputation outside of Quinn Emanuel and has all but ensured that I would face extreme difficulties in finding new employment. On September 16, 2016, in open court before a local Maryland circuit court judge and in the presence of other lawyers, Quinn Emanuel falsely claimed that I had "threatened to sue" the Firm in response to their July 2016 motion to withdraw from a case I brought to the Firm.

55. The Firm also made several other disparaging comments about me on the record at the September 2016 hearing, suggesting that I had not provided adequate representation to the

---

[2] On June 7, 2016, Mr. Corey again refused to provide me with my 2015 performance evaluation, even though I am informed and believe that the Firm provided performance evaluations to other associates.

Page 9