October 22, 2019

RECEIVED
OCT 23 2019
Clerk, U.S. District and
Bankruptcy Courts

Honorable Judge Trevor N. McFadden
United States District Judge
District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Re:   *Nwaneri v. Quinn Emanuel Urquhart & Sullivan LLP*, Case No. 19-cv-1540 (TNM)

<u>PLAINTIFF'S NOTICE OF DEFENDANT'S FAILURE TO EFFECT SERVICE
OF MOTION TO DISMISS AND OTHER CRITICAL FILINGS;
PLAINTIFF'S MOTION TO ORDER DEFENDANT TO PROPERLY SERVE PRO SE PLAINTIFF
AND FOR MODIFICATION OF THE COURT'S SEPT. 9, 2019 ORDER</u>

Plaintiff, proceeding pro se in forma pauperis, hereby submits this response to Defendant Quinn Emanuel's September 30, 2019 Letter to the Court and October 1, 2019 Notice relating to Defendant's unfounded allegations that Plaintiff's furnishing of her still currently valid mailing address[1] in South Carolina has somehow frustrated Defendant's ability to effect service of its recently filed motion to dismiss. By Quinn Emanuel's own admission, it intentionally refused to mail its pleadings by regular mail—opting instead to demand in-person service (not required under the Federal Rules of Civil Procedure) by restricted certified mail with mandatory signature confirmation, to both harass and embarrass Plaintiff. Rather than simply mailing the pleadings by "first class mail" as stated in Defendant's Certificates of Service, Quinn Emanuel took the unnecessary and retaliatory step of requiring an in-person recipient to sign a confirmation before USPS would deliver the documents. Quinn Emanuel further frustrated delivery by waiting weeks before notifying Plaintiff or the Court of their delays in effecting service.

Based on Quinn Emanuel's failure to properly serve its motion to dismiss, the Court cannot, at this time, properly rule on the motion to dismiss. To that end, Plaintiff respectfully requests that the Court (i) issue an order directing Plaintiff to serve pro se Plaintiff by standard mail at her mailing address in South Carolina (or by email service upon entry of the Court's order) and (ii) allow Plaintiff to submit her opposition to the motion to dismiss on the timeline contemplated by the Federal Rules of Civil Procedure.

BACKGROUND

The controversy between Plaintiff and Quinn Emanuel has persisted for several years, having started with discriminatory actions by Quinn Emanuel during Plaintiff's employment with Quinn Emanuel and Quinn Emanuel's subsequent and ongoing harassment of Plaintiff and her family members, which culminated in legal actions against Plaintiff's father-in-law in arbitration and the Superior Court for the District of Columbia.

---

[1] Defendant's recent claims Plaintiff allegedly provided an invalid address are nothing more than Quinn Emanuel's attempt to reframe/cover-up/obfuscate the fact that Defendant Quinn Emanuel, a 700-person law firm representing itself in this matter, and the 7-attorney team assigned to this matter, purposefully failed to serve pro se Plaintiff with a dipositive motion and took actions to actively prevent delivery of the documents; never informed Plaintiff directly that the dispositive motion and other documents were not delivered due to Defendant's chosen method of delivery; and waited 3 weeks to inform anyone its purported inability to serve the documents on Plaintiff—despite knowing these documents were not only never delivered, but had been returned to Quinn Emanuel directly; and that, even after QE was well aware of its failed service (of the motion and other documents), Defendant made no attempt to serve the motion in accordance with Fed. Rule 4.

1

Plaintiff filed the instant action on May 6, 2019, alleging employment discrimination, retaliation, harassment, and other federal and state claims. Although the matter was docketed as May 7, 2019, the envelope containing the complaint was timestamped on May 6, 2019 at 11:58 p.m. and submitted along with the complaint (which was timestamped at 12:02am on May 7, 2019 out of an abundance of caution) into the after-hours filing box at the courthouse. This may be verified by a review of the security footage and the U.S. Marshal on duty that evening.

More than 3 months later, Quinn Emanuel finally responded to Plaintiff's complaint by filing four documents in September—two pleadings filed on Sept. 5, 2019 and mailed on Sept. 6, 2019 ("Sept. 6 Mailings"), and two motions filed on Sept. 6, 2019 mailed on Sept. 9, 2019 ("Sept. 6 Filings"). Quinn Emanuel never served these documents, and their attempts to do so were ineffective, and inconsistent with Rule 5 of the Federal Rules of Civil Procedure. Moreover, Quinn Emanuel's representations to this Court about their attempts to serve or contact Plaintiff are replete with blatant falsehoods, which the Court appears to have relied on in its Sept. 9 Order.

First, Defendant has repeatedly misrepresented the dates of service in its pleadings, serving them much later that claimed stated in Quinn Emanuel's certificates of service. In at least four pleadings, Quinn Emanuel claimed to have already Plaintiff in its certificates of service, but waited up to three days later to actually mail Plaintiff the documents. For instance, Quinn Emanuel's Sept. 6 Mailing contained two filings: a notice of appearance and Defendant's corporate disclosure statement, both of which were dated and filed Sept. 5, 2019. The certificates of service for both documents claimed that Quinn Emanuel served the documents to Plaintiff by "first class mail" on. Sept. 5, 2019. But Quinn Emanuel did not serve Plaintiff with either document until Sept. 6, 2019—the day <u>after</u> Quinn claimed to have served Plaintiff by "first class mail" on Sept. 5 in both certificates of service attached to Mr. Smith's Notice of Appearance and corporate disclosure statement filed on Sept. 5, 2019. *See* Exhibit 1 (Ex. A of Defendant's Oct. 1 Notice (USPS tracking information confirming that Quinn Emanuel did not mail the envelope until Sept. 6, 2019 at 11:17 p.m.)).

On the same day Quinn Emanuel mailed the first two documents, Sept. 6, 2019, Quinn Emanuel also filed two motions electronically with the court: a motion to dismiss and a motion for pro hac vice admission. Again, Quinn Emanuel falsely claimed that they already served Plaintiff with these motions by "first class mail" on Sept. 6, 2019. See Exhibit 2 (Defendant's certificate of service for pro hac vice motion claiming to have served the motion by "first class mail" on Sept. 6, 2019). This too was untrue, as Quinn Emanuel did not attempt to serve these documents on Plaintiff until *3 days later*, Sept. 9, 2019, as admits in its Oct. 1 Notice. *See* Exhibit 1 (Defendant's Oct. 1 Notice stating that the two motions were filed Sept. 6, 2019 but not mailed until Sept. 9, 2019) and Ex. B to Oct. 1 Notice (USPS tracking information showing Sept. 9 envelope mailed at 11:27 p.m.).[2] In addition to misrepresenting the date of service again, Quinn Emanuel waited 3 days after filing the motions to serve them.

As though Quinn Emanuel's misrepresentations about the dates of service on Plaintiff were not bad enough, the fact that Quinn Emanuel waited three days to mail the two motions filed on Sept. 6 is particularly inexcusable because Quinn Emanuel sent another mailing to Plaintiff that same day (i.e., the Sept. 6 Mailing, which included the notice of appearance, corporate disclosure, and the falsified service dates, totaling about 5 pages) and could have easily included the Sept. 6 Filings (i.e., the motion to dismiss and motion for pro hac admission which Quinn Emanuel did not serve until Sept. 9). Quinn Emanuel filed the Sept. 6 Filings (totaling less than 40 pages) on the same day as Quinn Emanuel's Sept. 6 Mailing (which were not mailed until after 11pm that night, according to the USPS records).

---

[2] Although QE claims to have mailed a courtesy copy of the Motion to Dismiss, any such email sent by QE support staff after these filings does not constitute service under Rule 4 because QE did not seek (or receive, obviously) consent to serve Plaintiff with any of these documents by email, which Rule 5 requires for pleadings, such as QE's Motion to Dismiss the Complaint. Similarly, Plaintiff was not a "registered Pacer filer" at the time of both service attempts, therefore, Quinn Emanuel's filing the Motion to Dismiss through the ECF system does not satisfy Rule 4's allowance for such service through e-filing.

So despite Quinn Emanuel's most important filing—the motion to dismiss—being filed on Sept. 6, Quinn Emanuel not only neglected to include it in the Sept. 6 Mailing (i.e., the certified restricted envelope with return receipt and signature confirmation required, that Quinn Emanuel already prepared to send Plaintiff that night), but then waited another 3 days to serve Plaintiff with the most critical and time-sensitive filing, Quinn Emanuel's motion to dismiss, which it did not mail until Sept. 9—despite that motion being filed on the same day as Defendant's Sept. 6 Mailing.[3]

Third, as with the false certificate of service dates, Quinn Emanuel also misled the court about its method of service of these pleadings, claiming that Defendant served the filings to Plaintiff by "first class mail". In actuality, Defendant sent these filings by certified restricted mail with mandatory signature confirmation and return receipt, not standard mailing (which is all that Rule 5 requires). Certified restricted mail with return receipt requires in-person service and the recipient's signature must be provided before USPS will deliver the mailing to the address. Without such signature, USPS will not deliver the parcel and will instead return it to sender. By sending the mailings in this manner, without notifying Plaintiff to expect them or of their later delivery failures, Quinn Emanuel created a barrier to delivery of the documents rather than facilitating their service.[4]

Unsurprisingly, neither mailing was delivered, and after a total of two attempts and a notice being left at the residence, USPS returned both mailings to Quinn Emanuel within 3 days of attempted delivery. Based on the USPS tracking information Quinn Emanuel provided, Defendant was on notice of these delivery failures as early as Sept. 12, 2019. Despite knowing of these delivery failures for weeks, Quinn Emanuel waited until Sept. 30, 2019, to notify anyone of its delivery failures. And their first move was to contact the Court on Sept. 30 by letter, alleging without factual basis, that Plaintiff violated the Local Rules and that the provided address was incorrect. Rather than contacting Plaintiff about Defendant's self-inflicted service and delivery failures, Defendant waited nearly three weeks after knowing the packages were not delivered to notify the Court on Sept. 30 and again by notice dated Oct. 1, 2019 of its failures to effect service. These filings were the first notice Plaintiff received from Quinn Emanuel regarding any of its delivery attempts and/or failures. This was also the first time Quinn Emanuel notified Plaintiff by any method of any difficulty in effecting service, despite its misrepresentations in the Sept. 30 letter and Oct. 1 Notice, which notices failed to mention that their decision to serve the motion by method requiring in-person delivery and signature—without Plaintiff's knowledge or consent—had affirmatively prevented delivery of the documents.

In the meantime, Defendant did nothing to rectify the situation, neither contacting Plaintiff by phone[5] or email, or simply re-serving the documents by standard mail service that does not impede delivery and complies with

---

[3] Plaintiff also notes that QE's decision to send multiple important documents which had been signed within days of each other—including two motions, one of which was a dispositive motion to dismiss—in two separate envelopes was also peculiar. According to the dates on the documents, QE prepared them within 2 days of each and in total, the four documents contained less than 50 pages so easily could have been mailed in one envelope. Instead, Defendant divided the 4 short documents in two envelopes and sent each envelope by certified restricted mail to Plaintiff, and on different dates (Sept. 6 and Sept. 9, 2019). This required USPS to make twice as many attempts to deliver documents Defendant had needlessly separated into two envelopes, as Quinn Emanuel required both envelopes to be signed for in-person before delivery.

[4] Such barriers to delivery are not the service that Rule 5 contemplates, especially considering that Quinn Emanuel was well aware that it was sending documents to the residence of pro se Plaintiff (rather than an office building with a reception desk); that one of the documents was a particularly time-sensitive motion to dismiss; and that Quinn Emanuel had neither disclosed to Plaintiff its plan to send the documents by method requiring in-person delivery of the documents, nor did Quinn Emanuel inform Plaintiff of any delivery problems when they occurred.

[5] Plaintiff also notes that there is no record of Quinn Emanuel's alleged phone call or voice mail message on Sept. 25, as Defendant's Oct. 1 Notice claims. Even if true, a call on Sept. 25—some 14 days after QE was aware of failed delivery

Rule 5. Instead, Quinn Emanuel knew of the delivery problems but did not bother sending a single email alerting Plaintiff about (1) its intent to serve the documents by method requiring in-person service (much less that there were 2 mailings, each sent by certified restricted mail with return receipt signature confirmation), see Exhibit 1 (Ex. F to Defendant's Oct. 1 Notice (Sept. 5, 2019 email fr. Quinn Emanuel, which only mentions "efiling" and says nothing about mail service); or (2) the service problems they purported to experience in September.

## ISSUES

By its own admissions in its Sept. 30 and Oct. 1, 2019 filings, Quinn Emanuel's purported attempts to serve Plaintiff the Motion to Dismiss, and other filings of Sept. 5 and Sept. 6, 2019, failed because of Quinn Emanuel's chosen method of service and delivery, which was not in conformity with Rule 5. Rule 5 provides that pleadings are to be served by "handing it to the person," "mailing to the person's last known address,' or "delivering it by any other means that the person consented to in writing," among other methods of service. See Fed. R. Civ. P. 5(b)(2).

Instead, as explained above, rather than simply mailing the documents by "first class mail" as stated in its Certificate of Service, Quinn Emanuel took the unnecessary step of demanding certified restricted mail with return receipt and signature confirmation before the documents would be released at the address. Consequently, Plaintiff did not receive the motion to dismiss until on or around Oct. 3, 2019 (from sources other than Quinn Emanuel). Quinn Emanuel did this without informing Plaintiff of these mailings or Defendant's purported delivery problems, and made no efforts to correct the situation for weeks after Quinn Emanuel became aware of the failed service attempts.

   1. **Court's Sept. 9 Order Based on Quinn Emanuel's Misrepresentations Re: Service**
On Sept. 9, 2019, this Court issued an order "advising Plaintiff to respond to the Motion to Dismiss on or before Oct. 9, 2019, or the court may treat the motion as conceded and dismiss the complaint." The Court's Sept. 9 Order appears to have been issued sua sponte and in reliance on Quinn Emanuel's representations in its Motion to Dismiss and accompanying Certificate of Service that Defendant had served Plaintiff the motion on Sept. 6, 2019, and/or the Court's mistaken belief or assumption that service had been properly effected and the documents delivered to Plaintiff. See Exhibit 1 (acknowledging motion to dismiss filed on Sept. 6 but not mailed until Sept. 9, 2019).

But as explained above, Defendant never properly served Plaintiff with the motion to dismiss or the other documents in its Sept. 6 and Sept. 9 mailings, which were returned to Quinn Emanuel in mid-September. Quinn Emanuel chose to serve the documents in a manner that prevented delivery of the documents, requiring a person to be physically present in order to receive and sign for the documents in order to USPS to deliver the mailing. This was both inconvenient (as it requires personal service and Quinn Emanuel did not inform Plaintiff of its plan to serve the documents this way) and unnecessary because Rule 5 only requires "mailing" (not restricted certified mailing with unilaterally added conditions that hinder delivery). Further, Plaintiff is under no obligation to be available in-person to receive service, and Defendant never told Plaintiff of their plan to serve any documents by certified restricted mail with return receipt and signature confirmation.[6]

---

attempts—was late and insufficient to warn Plaintiff of QE's purported attempts to deliver critical and time-sensitive motions that QE had failed to properly serve.

[6] Plaintiff has experienced a significant and pernicious pattern of Quinn Emanuel abusing the address and contact information Plaintiff has provided in the context of other proceedings between Plaintiff, her close family members, and the law firm, such as the $20,000 arbitration Defendant initiated against Plaintiff's father-in-law 3 days after the filing of Plaintiff's EEOC charge; that during the arbitration, Quinn Emanuel repeatedly harassed Plaintiff and her family, including by forcing her to serve as a nonparty witness in an alleged $20,000 "billing dispute" with her father-in-law, and sending 4-5

Quinn Emanuel is responsible to reasonably effect service and delivery, but Quinn Emanuel's defective service prevented the delivery of the documents they purported to serve. As a result of Quinn Emanuel's chosen method of service, both USPS packages were never delivered to Plaintiff and instead were returned to Quinn Emanuel on Sept. 13 and 16, 2019. And when Quinn Emanuel learned from USPS that its two unannounced certified restricted mailings not delivered due to Quinn Emanuel's decision to require in-person signature, Defendant did nothing for weeks (no calls or emails to Plaintiff, or even just resending the documents by regular mail as provided in Rule 5). Instead, after receiving notice that its motion to dismiss and other filings were not delivered, Quinn Emanuel waited 3 weeks to notify anyone of these delivery issues, all the while making no attempt to rectify the problems caused by their defective service methods. This was not only inconsistent with Rule 5, but it resulted in both mailings being returned to Quinn Emanuel and never delivered to the Plaintiff's address of record.

2. **Validity of Plaintiff's Address and Contact Information**

Contrary to Defendant's representations, Plaintiff's mailing address is valid. Defendant's fixation on Plaintiff's mailing address and Quinn Emanuel's other alleged attempts to communicate with Plaintiff are unfounded, baseless misdirection. Plaintiff's address is valid, and she resides and receives mail there. To deflect from Quinn Emanuel's service deficiencies, Defendant resorts to making false accusations about the validity of Plaintiff's address (stating unequivocally—and without any support—that Plaintiff violated local rules regarding maintaining updated contact information) and about Plaintiff's previous service as a law clerk on federal district and federal appellate courts precluding her status as a pro se Plaintiff proceeding in forma pauperis.

Both arguments are unavailing. Quinn Emanuel's accusations that Plaintiff provided an invalid address are not only meritless but contradicted by the USPS tracking information Quinn Emanuel attached as exhibits to their Oct. 1 Notice. In addition, Defendant has offered no proof—other than hyperbole and bravado—to support Quinn Emanuel's unfounded accusation that Plaintiff provided an invalid address and/or violated local rules. The entirety of Defendant's proof of this claim are two USPS confirmation pages that Defendant filed with the court—one of which says clearly that the package was returned to QE because no recipient was available to accept delivery; the other says the package was returned as "addressee unknown". Rather than simply recounting those facts, Defendant's Oct. 1 Notice speculates to the Court that the two-word phrase "addressee unknown" means "USPS reviewed their database and confirmed that Ms. Nwaneri was not associated with and did not live at the Provided Address," which is complete conjecture and exaggeration.

Even more, the "addressee unknown" notation is in direct conflict with the second USPS tracking confirmation for the envelope containing the motion to dismiss, which Quinn Emanuel provided with its Oct. 1 Notice. *See* Exhibit 1 (Ex. B to Defendant's Oct. 1 Notice). That tracking confirmation instead shows that the envelope containing the motion to dismiss was not delivered (and returned to Defendant) because no recipient was available to sign for it. *See*
Exhibit 1 (Ex. B to Defendant's Oct. 1 Notice (stating that the 2nd mailing containing the motion to dismiss was returned because no authorized representative was available).

Likewise, Quinn Emanuel would rather focus the court's attention away from its failures to email or make any substantiated attempt to contact Plaintiff between August. 23 and Sept. 30, to inform her of Quinn Emanuel's intention to (and failed attempts to) serve the documents by certified restricted mail with return receipt (requiring the signature from a person within the residence, otherwise the documents would not be delivered.

---

process servers in person to the front door of the residence address provided for emergency use only, to post notices of the nonparty subpoena on the front door of the home and repeatedly came to the residence to deliver another copy in person to a recipient---all after Plaintiff had already agreed to accept service of the nonparty subpoena by email (and had already acknowledged receipt).

5

Instead, Quinn Emanuel would rather misdirect the Court's attention to an August email from an unknown attorney at Quinn Emanuel, which Quinn Emanuel seems to suggest supports their narrative of inability to serve Plaintiff with it motion to dismiss because Plaintiff did not respond directly to this email. But it does not. First, the August 23, 2019 email was sent weeks before Quinn Emanuel filed its motion to dismiss and had nothing to do with Defendant's motion. Second, it was a message from Sara Clark, an unknown junior associate working in Defendant's Houston, Texas office, who is not licensed to practice in the District of Columbia, and was completely unaffiliated with the case. At the time, no one from Quinn Emanuel had appeared in the case (including Richard Smith), nor had Ms. Clark even submitted her own motion to appear in the matter pro hac vice (which was not submitted until weeks later). Furthermore, Ms. Clark's interpretation of the Local Rule was wrong and her demands unreasonable; she was attempting to order Plaintiff's attendance for a conference she claimed was mandatory based on Local Rule 16.3. But no such conference is required before Defendant has answered or otherwise responded to the complaint. *See* Local Rule 16.3. Thus, because she was not authorized to communicate with Plaintiff or on behalf on Quinn Emanuel—and had completely misinterpreted the Local Rule—that email did not warrant a response and is irrelevant for purposes of determining whether Defendant properly effected service.

### 3. Status as Pro Se Plaintiff Proceeding In Forma Pauperis

Irrespective of Quinn Emanuel's characterization of Plaintiff as an "atypical" pro se plaintiff, Plaintiff is not only pro se, but also proceeding in forma pauperis. Unlike Quinn Emanuel, the 750-lawyer self-described "powerhouse" law firm represented by scores of in-house attorneys and staff across different offices, Plaintiff is only one person. Quinn Emanuel's focus on Plaintiff's completion of two federal clerkships on the district and appellate court is deflection and has no bearing on my status as a pro se litigant proceeding in forma papers and/or compliance with local rules. Likewise, the fact that Mr. Smith and Ms. Clark have not served as law clerks on two federal courts has no bearing on these issues.

Plaintiff notes, however, that Quinn Emanuel's reliance on case law such as *Mann v. Castiel*, 681 F.3d 368, 376-77 (D.C. Cir. 2012), regarding "typical" pro se litigants with litigation experience is misplaced and inapplicable here. To begin with, *Mann* does not support Defendant's position that pro se litigants with legal training are not entitled to pro se status. *See Mann v. Castiel*, 681 F.3d 368, 376-77 (D.C. Cir. 2012). Defendant's Oct. 1 Notice conveniently omits a critical section of the cited quotation, in which the court makes clear that the relevant plaintiffs were not "typical" pro se plaintiffs because they had access to legal representation throughout the proceedings and been working "in tandem" with the attorneys representing the corporate plaintiffs. Such is not the case here. Additionally, that case t only concerned the pro se litigant's failed attempts to effect service, and the issue here concerns Defendant's defective service.

Plaintiff has still never been served by Quinn Emanuel, and Plaintiff did not receive the motion to dismiss until on or around Oct. 3 as a result of Defendant's botched service attempts, leaving only 6 days to read and process the 31-page motion, do legal research, and prepare an Opposition by the Oct. 9 date advised by the Court's Sept. 9 Order. This is not a sufficient amount of time for an adequate reply to Defendant's Motion to Dismiss and supplemental filings, under the Federal Rules of Civil Procedure, and certainly not for a pro se Plaintiff proceeding in forma pauperis. Regardless of Plaintiff's status as an attorney, she is asserting claims against a gargantuan 750-lawyer law firm that has demonstrated a vendetta against Plaintiff and her family, including ongoing harassment in retaliation for Plaintiff's protected complaints of employment discrimination, and deploying no less than 20 attorneys to harass Plaintiff and her family since 2015 and continuing now.

A 6-day turnaround would be difficult for a law firm to adequately respond to a motion to dismiss, and Plaintiff respectfully notes that Quinn Emanuel, one of self-proclaimed largest and best law firms in the world, according to the motion to dismiss, an entire 3 months to prepare its motion to dismiss in response to Plaintiff's complaint. *See* Motion to Dismiss, filed Sept. 6, 2019, and Compliant, filed May 6, 2019. It cannot be that the Court intended to give a pro se Plaintiff proceeding in forma pauperis—who is also the full-time primary caregiver to 3 children

6

under the age of 5, including a 25-month old and 11-month old—less time than the Federal Rules would normally provide, significantly less time than intended by the Sept. 9 Order, and less time that Quinn Emanuel—the 700-person "best available" law firm had to prepare its motion in response to the complaint.

## CONCLUSION

Due to Quinn Emanuel's misrepresentations to the Court in its motion to dismiss and other pleadings, failure to properly serve Plaintiff, unreasonable delays in notifying Plaintiff of the failed service attempts, failure to take any corrective action, and that Plaintiff only received Defendant's motion to dismiss 2 weeks ago, Plaintiff requests modification of the Court's Sept. 9 Order to allow Plaintiff until Oct. advising response to Defendant's motion to dismiss by November 7, 2019.

Dated: Oct. 22, 2019

/s/ Crystal B. Nwaneri
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2019, I filed the foregoing document with the Clerk of the Court, and caused to be served by first class mail a copy of the foregoing on:

Richard C. Smith
Quinn Emanuel Urquhart & Sullivan LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005

/s/ Crystal N. Nwaneri
Plaintiff, Pro Se